UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**SHANE BROWNE**,<br><br>Defendant. | Case No. 1:17-CR-00241 (TNM) |

**<u>MEMORANDUM AND ORDER</u>**

Shane Browne, convicted by a jury of kidnapping and of possession with intent to distribute marijuana, seeks a new trial or a judgment of acquittal.  He argues for a new trial based on allegations that the Court instructed the jury erroneously, that the jury reached mutually exclusive verdicts on two counts of the indictment, and that the jury's verdict was against the weight of the evidence.  He argues for acquittal based on his victim's alleged lack of credibility and the inherent improbability of his victim's testimony.  Because Mr. Browne has not identified plain error in the jury instructions, has not identified mutually exclusive verdicts, has not shown that the weight of the evidence favors acquittal, and has not carried the burden of discrediting his victim's testimony, Mr. Browne's Motion for New Trial or Judgment of Acquittal is DENIED.

## I.    BACKGROUND[1]

Mr. Browne stood trial on a seven-count indictment charging him with kidnapping, assault with a dangerous weapon, possession with intent to distribute marijuana, and firearms-related violations under federal and District of Columbia law.  Superseding Indictment at 1-3.  At trial, the Government called Ulises Flores, a former Lyft driver and the victim of Mr. Browne's

---

[1]  This order summarizes the facts that are material to the arguments Mr. Browne raises in his motion and is not an exhaustive description of the evidence adduced at trial.

kidnapping.  *See* Tr. 211.  Mr. Flores testified that he gave Mr. Browne a Lyft ride from an apartment in Northwest Washington, D.C. to a McDonald's in Aberdeen, Maryland on December 11, 2017.  *Id.* at 218-19, 224, 230; *see also* Gov. Ex. C (Lyft records).  During the drive, he overheard Mr. Browne on the phone discussing email encryption and the fact that he had a backup person to keep his business going if he went to jail.  Tr. 226.  And he noticed that Mr. Browne smelled strongly of marijuana.  *Id.*  Mr. Flores began to suspect that Mr. Browne was a drug dealer.  *Id.* at 360.  He was right.

After Mr. Flores dropped Mr. Browne off, he took some time to call his wife, buy a coffee, use the restroom, wash his face, and—as he liked to do between rides—to clean his car. *Id.* at 230-31, 234, 323-29; *see also* Gov. Ex. B9 (security camera footage of Mr. Flores at the McDonald's counter); Gov. Ex. B11 (security camera footage of Mr. Flores leaving the McDonald's restroom and picking up his order); Gov. Ex. B13 (security camera footage of Mr. Flores cleaning his car in the McDonald's parking lot).  He got back in his parked car, still talking with his wife.  Tr. 239.

Suddenly, Mr. Browne returned with a suitcase that he had not had before, put it in the trunk of Mr. Flores's car, and got in the back seat.  *Id.* at 241; *see also* Gov. Ex. A1 (apartment security camera footage of Mr. Browne entering Mr. Flores's car without a suitcase); Tr. 314 (describing video); Gov. Ex. B1A (McDonald's security camera footage of Mr. Browne putting a suitcase in Mr. Flores's trunk and entering the car); Tr. 332-34 (describing video).  According to Mr. Flores, he told Mr. Browne he did not want to drive him back, but Mr. Browne drew a gun from his backpack and ordered him to drive.  *Id.* at 247, 249-54.

During the drive, Mr. Flores noticed that a phone call had distracted Mr. Browne, and he took the opportunity to surreptitiously send Lyft an email asking them to call the police because

he was in trouble. *Id.* at 257-59, 338; *see also* Gov. Ex. 116 (email). At the end of the drive, Mr. Browne put $100 in cash on an armrest in the car, took his suitcase, and went into the apartment building from which he had started. Tr. 261-62. Mr. Flores tried to use his phone to take a video of Mr. Browne as he walked away. *Id.* at 262, 310. Although the recording did not capture a clear image of Mr. Browne, it did capture the sound of Mr. Flores's heavy breathing, suggesting significant stress. Gov. Ex. 105 (video); Tr. 341 (describing video). Mr. Flores then drove away. *Id.* at 263. He tried to call Lyft to remove his personal information from its app because of his concern that Mr. Browne could use the information to harm him and to warn Lyft against sending other drivers to Mr. Browne. *Id.* at 264-65, 419-20. While he was waiting for Lyft to pick up the phone, he pressed the OnStar button in his car and explained his situation to the dispatcher. *Id.* at 266. She offered to call the police, and he eventually agreed. *Id.* at 266-67.

When the police arrived, Mr. Flores explained what had happened, described Mr. Browne, and identified Mr. Browne in a photograph that the police took from security camera footage at the apartment where Mr. Flores dropped him off. *Id.* at 267-69, 471-75. He also gave the police the $100 that Mr. Browne had left in the car. *Id.* at 270. Based on Mr. Flores's identification and a discussion with building staff, the police learned Mr. Browne's apartment number. *Id.* at 475-76. About two hours after Mr. Flores dropped Mr. Browne off, the police knocked on Mr. Browne's door and arrested him. *See* Gov. Ex. A2 (security camera footage of Mr. Browne's return to the apartment); Tr. 335-36 (discussion of time-stamp showing Mr. Flores dropped Mr. Browne off at around 7:26 p.m.); Gov. Ex. 125 (body-worn camera footage of police knocking on Mr. Browne's door and arresting him when he came out); Tr. 503 (discussion of time-stamp showing Mr. Browne came to his door at around 9:26 p.m.). They sealed his apartment but did not search it then. *Id.* at 504-05.

The next day, the police obtained a warrant and entered Mr. Browne's apartment.  *Id.* at 560.  They found about 78 pounds of marijuana in Mr. Browne's apartment unit, most of it in heat-sealed bags packed in three suitcases and a plastic bin.  *Id.* at 650, 676-82, 719, 735.  They also found other drug paraphernalia, a money-counting machine, a heat-sealing machine, and about $35,000 in cash.  *Id.* at 628, 635, 663, 686, 692-94, 756.  But the police found no gun in or around the apartment building.  *Id.* at 561-62.  They noticed a trash chute on Mr. Browne's floor but learned that the trash had been taken out overnight.  *Id.* at 574-75, 580.

That same day, Mr. Flores returned his car, which he had leased for eight months, because he no longer felt safe in it.  *Id.* at 290.  He had had no problems with the car up to that point, but he was afraid Mr. Browne would identify him by the car's tag or make and model.  *Id.* at 290-91.  Mr. Flores also had Lyft change his profile information in the Lyft app.  *Id.* at 289.

In addition to testifying about the kidnapping and its aftermath, Mr. Flores testified about his own background.  Mr. Flores said that he entered the United States legally in 2008 but overstayed his visa.  *Id.* at 275.  At the time of the kidnapping, he had not taken steps to regain legal status.  *Id.* at 276.  He believed he could regain legal status because of his marriage to a permanent legal resident.  *Id.* at 276.

Mr. Flores's wife had gotten a U visa as a victim of domestic violence in a prior relationship.  *Id.* at 277.  At first, Mr. Flores thought that only domestic violence victims could get U visas.  *Id.* at 278.  He did not learn that he could be eligible for a U visa as a kidnapping victim until after he had spoken with the police, met with prosecutors, signed a consent form for the Government to search his phone, and testified before a grand jury.  *Id.* at 280-81.

At the time of trial, Mr. Flores had decided to seek a U visa but had not completed his application.  *Id.* at 287.  During closing argument, the Government addressed the possibility that

4

Mr. Flores might have fabricated a tale of violent crime to get a visa. *Id.* at 817, 825. And

Mr. Browne's counsel argued that the jury should not credit Mr. Flores's testimony, in part

because he must have known from his wife's experience that he would be eligible for a U visa if

he claimed to have been a kidnapping victim. *Id.* at 840, 846-47.

The Government also presented evidence supporting various parts of Mr. Flores's

testimony, including fingerprint evidence showing that Mr. Browne touched Mr. Flores's car,

Lyft records corroborating that Mr. Browne had ordered a ride from his apartment to Aberdeen,

and several surveillance videos. Tr. 557-58 (expert testimony on fingerprint evidence); Gov.

Exs. A1, A2, B1, B1A, B4, B6-13, B15-17, B20-23 (surveillance videos and still shots from

surveillance videos); Gov. Ex. C (Lyft records).

As in this motion, Mr. Browne's trial counsel did not meaningfully contest the

overwhelming evidence relating to the drug charge. Rather, counsel sought to discredit the

evidence for the remaining counts, suggesting that Mr. Flores willingly drove Mr. Browne from

the McDonald's. *Id.* at 842-45. Counsel suggested that Mr. Flores became concerned that he

would be implicated in Mr. Browne's drug activity and that he concocted the kidnapping story to

protect himself. *Id.* at 845. Mr. Browne called no witnesses in his defense.

After the close of evidence and outside the presence of the jury, the Court and the parties

discussed the joint proposed jury instructions that the parties had submitted before trial. *Id.* at

772-81. The Court explained at the outset that it would identify issues for discussion and

instructed counsel to "speak up if you believe there are any other [issues]." *Id.* at 772. The

Court said it intended to strike Jury Instruction 2.219, which states:

> You have heard evidence that [name of witness] is [on probation] [on parole] [on
> supervised release] [charged with a crime] [awaiting sentence] [under
> investigation]. You may consider this evidence when deciding whether the witness

> has a bias in favor of one of the parties that may affect his/her willingness to tell
> the truth.

*Id.* at 777.  Pretrial, the parties had listed this as an instruction to give the jury "if applicable."

Joint Proposed Jury Instructions 49.  But the Court expressed its view that the instruction did not

apply given the evidence produced at trial, and the parties offered no objection.  *Id.* at 777.[2]  Nor

did the parties offer any objection when, after reviewing all the instructions, the Court asked

whether they had any remaining questions or suggestions.  *Id.* at 781.

 The Court instructed the jury, and the jury convicted Mr. Browne on Counts I and III of

the indictment.  Verdict Form 1-2.  Counts I and III charged Mr. Browne with federal kidnapping

and possession with intent to distribute marijuana, respectively.  *Id.*  The jury acquitted

Mr. Browne on the remaining counts.  *Id.* at 1-3.  Mr. Browne retained new counsel post-trial.

## II. ANALYSIS

 Mr. Browne's motion argues for a new trial or for acquittal on the kidnapping count of

his conviction.  Although one heading in his motion asserts that he may be entitled to a new trial

on the drug count as well, the subheadings in this section of the brief show that his actual

arguments focus on the kidnapping count.  *Compare* Mot. New Trial 1 ("Mr. Browne is entitled

to a new trial on Counts 1 and/or 3.") *with id.* ("The erroneous removal of Instruction 2.219

constitutes plain error and warrants a new trial on Count 1 (kidnapping).") *and id.* at 8 ("The

guilty verdict on the kidnapping charge should be vacated as being against the weight of the

evidence, warranting a new trial.") *and id.* at 10 ("The logically inconsistent verdicts on Counts I

and II require a new trial on the former.").  Because Mr. Browne has offered no argument for a

new trial or for a judgment of acquittal on Count III, the Court focuses its analysis on Count I.

---

[2]  By contrast, the parties volunteered their views on other instructions and obtained the Court's agreement to provide an instruction that it originally said it would strike.  *See id.* at 774, 778-79.

*See Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (noting that, in an adversarial system, courts are generally limited to considering issues that the parties have fairly raised in their briefs, with citations to authority).

### A.  Mr. Browne Has Not Shown a Right to a New Trial

Federal Rule of Criminal Procedure 33 governs a motion for a new trial, giving a court discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  "Trial courts enjoy broad discretion in ruling on a motion for a new trial." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014).  But they must apply "a strong presumption . . . in favor of upholding the jury verdict."  *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990).  Mr. Browne argues that he should get a new trial because the Court committed plain error by omitting Instruction 2.219 from the jury instructions, because the jury reached mutually exclusive verdicts on two counts of the indictment, and because the conviction on kidnapping is against the weight of the evidence.

### 1.  Mr. Browne Has Identified No Plain Error in the Jury Instructions

Plain error requires "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *United States v. Simpson*, 430 F.3d 1177, 1183 (D.C. Cir. 2005).  A court may correct an error that meets these threshold requirements "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *Id.*  Mr. Browne's main argument for a new trial is that the Court committed plain error by omitting Jury Instruction 2.219, which states, "You have heard evidence that [name of witness] is [under investigation].  You may consider this evidence when deciding whether the witness has a bias in favor of one of the parties that may affect his/her willingness to tell the truth."  Mot. New Trial 1-8.  According to Mr. Browne, the Court should have provided this instruction to the jury because it applied to Mr. Flores as a

witness who was under investigation when he testified. *Id.* at 2. But Mr. Browne has waived any argument that the Court should have provided Instruction 2.219 and, in any case, has not satisfied any of the threshold requirements of plain error.

Mr. Browne waived any right to Instruction 2.219 by remaining silent when invited to share any concerns about the Court's plan not to provide the instruction to the jury. *See Wagner v. Taylor*, 836 F.2d 596, 599 (D.C. Cir. 1987) ("[A] litigant cannot avail himself of an error that he induced . . . ."); Tr. 777, 781. Mr. Browne challenges the applicability of waiver doctrine, distinguishing his silence in the face of alleged error from the situation in *Wagner*, where a litigant expressly argued in favor of the position that he later complained was erroneous. Reply ISO Mot. New Trial 3 (citing *Wagner*, 836 F.2d at 599). But the facts in *Wagner* are not the only ones that can trigger waiver. In fact, *Wagner* commented that "[a] starker instance of invited error [than one in which the litigant previously argued for the alleged error] could hardly be imagined." *Wagner*, 836 F.2d at 598-99. *Wagner* required only that a litigant induce error, not that a litigant argue for it. *Id.* at 599. And a litigant can induce error by failing to object when invited to do so. *See, e.g.*, *Clemente v. FBI*, 867 F.3d 111, 114 (D.C. Cir. 2017) (holding that litigant waived objections not raised in the time provided by district court). The Court repeatedly invited counsel to object to its tentative rulings on the proposed jury instructions, yet counsel held their tongues. They are too late now. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (noting that waiver extinguishes any error, barring review).

Even if Mr. Browne were correct that his silence at trial did not act as a waiver and that the Court should evaluate the omission of Instruction 2.219 under the plain error standard, he has failed to meet any of its three threshold requirements. *First*, Mr. Browne has not shown that the Court erred. An error for purposes of plain error review is a deviation from a legal rule that has

not been waived.  *Olano*, 507 U.S. at 732-33.  Instruction 2.219 does not apply to Mr. Flores's testimony.  Mr. Browne argues that the instruction was "squarely applicable" to Mr. Flores because of his "perilous immigration status."  Mot. New Trial 7; *see also id.* at 3 (arguing that the instruction was "especially applicable" because Mr. Flores faced possible deportation).  He notes that to get a U visa as a kidnapping victim Mr. Flores had to assist or be likely to assist in the investigation of the kidnapping.  *See id.* at 3.  And he claims that, in evaluating a U-visa application, federal agencies have authority "to investigate and follow up with the appropriate law-enforcement agency to determine if [the applicant] fulfilled the provision-of-assistance requirement."  *Id.* (citing 8 C.F.R. 245.24(d)-(e)).[3]

But Mr. Browne has not shown that the law recognizes perilous immigration status or the submission of a U-visa application as the equivalent of being under investigation for purposes of Instruction 2.219.  There is no record evidence that the Government ever investigated Mr. Flores for overstaying his original visa.  And although the Government may investigate a U-visa application, there is no record evidence that the Government ever decided to investigate Mr. Flores's application—an application that Mr. Flores had not even completed before he testified.  Tr. 287.  Mr. Browne's argument thus fatally trips on the first step.  Perhaps because he recognizes this missing link in his logic, Mr. Browne argues in his Reply that the subject of a *pending* criminal investigation qualifies as under investigation for purposes of Instruction 2.219.  Reply ISO Mot. New Trial 2.  But on this point his brief appears to substitute quotation marks

---

[3]  Mr. Browne mistakenly relies on a regulation that governs applications for adjustment of status from U-visa holder to permanent legal resident and that does not expressly authorize investigations.  *See* 8 C.F.R. 245.24(b) (authorizing adjustment of status for individuals who meet specific requirements including having maintained continuous physical presence in the United States for three years since getting a U visa).  But the regulation that applies to U-visa applications says that the United States Citizenship and Immigration Services "*may* investigate any aspect of [a U-visa application]."  8 C.F.R. 214.14(c)(4) (emphasis added).

for a citation to authority. *See id.* And even if this were the law, Mr. Browne has done nothing to show that Mr. Flores was the subject of a pending investigation.

Mr. Browne quotes language from an out-of-circuit district court decision that links U-visa applications with criminal investigations. Mot. New Trial 3 (quoting *Aybar v. Johnson*, 295 F. Supp. 3d 442, 448 (D.N.J. 2018)). But the investigations mentioned in *Aybar* are investigations of crimes committed against U-visa applicants, not crimes committed by U-visa applicants. *Aybar*, 295 F. Supp. 3d at 448. This case fits that model. It was Mr. Browne who was the subject of investigation. Mr. Flores, conversely, was assisting in the investigation. He was no more "under investigation" than a pitcher is "at bat." Because Mr. Flores was not under investigation when he testified, Instruction 2.219 had no application to him.

*Second*, Mr. Browne has failed to show that any error the Court committed was plain. A plain error is one that is "clear" or "obvious" under the law as it stands when a court reviews the alleged error. *Henderson v. United States*, 568 U.S. 266, 179 (2013). The Court has already concluded that Mr. Flores was not under investigation and that Mr. Browne waived any right he might have had to the instruction. The Court also determines, alternatively, that the omission of Instruction 2.219 is not obviously erroneous because the law does not make either of these points clear.

*Third*, Mr. Browne has not shown that any error affected his substantial rights. For purposes of plain error review, an error affects substantial rights only if the defendant proves that it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.[4] "[C]ourts do not review discrete elements of a jury instruction in isolation but rather in the overall context

---

[4] Under harmless error review, the Government would bear the burden of proving that the error did not affect the outcome of the proceedings. *Id.* But Mr. Browne concedes that, because he did not object at trial, plain error review applies. Mot. New Trial 2; Tr. 777.

of how the court told the jury to go about its work." *United States v. Udo*, 795 F.3d 24, 29 (D.C. Cir. 2015). To determine whether the omission of a jury instruction affected a defendant's substantial rights, a court evaluates whether the charge delivered to the jury "substantially covered" the omitted instruction. *Id.*; *see also United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008) ("Taking the instructions as a whole, our task is to determine whether the trial court adequately conveyed the substance of the requested instruction to the jury." (internal citations omitted)).

Mr. Browne offers three reasons to think that the omission of Instruction 2.219 affected the jury's verdict. First, he notes that Mr. Flores's testimony was central to the kidnapping charge. Mot. New Trial 5-6. Second, he argues that his attorney impeached Mr. Flores's credibility by pointing out several inconsistencies that he characterizes as "material to his story." *Id.* Third, he speculates that jury notes asking about the federal gun charge and about what to do if the jury had trouble reaching unanimity show that the jury struggled with the kidnapping charge. *Id.* at 8.[5] Given these three factors, Mr. Browne argues that omitting Instruction 2.219 likely changed the outcome of the jury's deliberations on kidnapping.

But none of this shows that inclusion of Instruction 2.219 would have led to a different verdict. Mr. Browne believes the Court should have instructed the jury, "You have heard evidence that Mr. Flores is under investigation. You may consider this evidence when deciding whether the witness has a bias in favor of one of the parties that may affect his willingness to tell the truth." The Court in fact instructed the jury, "You may consider anything that in your

---

[5]  The jury note about the federal gun charge asked whether the Government had to prove that Mr. Browne used a real gun and reflects no doubt about the kidnapping charge. *See* First Jury Note. The jury notes about struggling to reach unanimity on some charges stated that the jury had reached unanimity on another charge and so do not prove that the jury had trouble agreeing to convict on kidnapping. *See* Second Jury Note; Third Jury Note.

judgment affects the credibility of any witness." Tr. 789. More specifically, the Court instructed

the jury that it could consider "whether the witness has any motive for not telling the truth" and

whether witness "bias or prejudice has colored the testimony of the witness so as to affect the

desire and capability of that witness to tell the truth." *Id.* at 790, 791. This instruction gave

defense counsel ample opportunity to argue Mr. Flores was biased in favor of the government

because of his immigration status and potential U visa. And counsel took advantage of it.

At closing, the parties pointed out repeatedly that the jury had heard evidence about Mr.

Flores's immigration status and that this could impact their judgment of his credibility. *Id.* at

817, 825, 840, 846-47. So the jurors understood Mr. Flores's possible bias and knew that they

could consider this evidence in making credibility determinations. They did not need Instruction

2.219 to evaluate Mr. Flores's credibility properly, even if the instruction applied, nor did its

absence curtail counsel's ability to argue bias. Because the Court's general credibility

instruction adequately conveyed any relevant substance of Instruction 2.219, omission of

Instruction 2.219 did not affect the outcome of the trial. *See Hurt*, 527 F.3d at 1351.[6]

\*       \*       \*

Because Mr. Browne has not identified any error, shown that any error was plain, or

shown that any error affected his substantial rights, he has failed to satisfy any of the three

---

[6] Mr. Browne's Reply includes the curious but potentially relevant remark, "Because it meets
the test of plain error, the omission of Instruction 2.219 was not harmless error." Reply ISO
Mot. New Trial 4. If he means that omission of the instruction satisfies harmless error review,
the remark is irrelevant since no one contends that harmless error review applies. If he means
that any error that is plain necessarily affects substantial rights, his argument proposes to
eliminate the third prong of plain error review and mischaracterizes the Ninth Circuit case on
which it relies. *See United States v. Daniels*, 760 F.3d 920, 923 (9th Cir. 2014) (holding that any
error that meets the stringent requirements of plain error review also satisfies the requirement of
harmless error review). In any event, the premise that omission of the instruction meets the test
of plain error is false for reasons already stated.

threshold prongs of plain error review. Thus, the omission of Instruction 2.219 does not provide grounds for a new trial.

### 2. Mr. Browne Has Not Identified Mutually Exclusive Verdicts

"[A] criminal defendant convicted by a jury on one count [cannot] attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *United States v. Powell*, 469 U.S. 57, 58 (1984). But "where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand." *United States v. Daigle*, 149 F. Supp. 409, 414 (D.D.C. 1957). So, the Third Circuit has recognized the possibility that reversal may be merited where "a defendant is convicted of two crimes [and] a guilty verdict on one logically excludes the other." *United States v. Gross*, 961 F.2d 1097, 1107 (3d Cir. 1992). And the Ninth Circuit has suggested that a defendant may challenge a jury verdict by showing that two convictions are mutually exclusive from a logical standpoint. *Masoner v. Thurman*, 996 F.2d 1003, 1005 (9th Cir. 1993).

Mr. Browne argues that "it is not logically possible for the jury to have found the defendant not guilty on the weapons charges and guilty on the kidnapping charge" since the only evidence of coercion was Mr. Flores's testimony that Mr. Browne pointed a gun at him. Mot. New Trial 11. This argument fails for two reasons. First, Mr. Browne complains that an acquittal and a conviction are inconsistent, not that two convictions are mutually exclusive. In part because inconsistent verdicts can reflect a jury's lenity, the law does not allow defendants to challenge a conviction based on an inconsistent acquittal. *Powell*, 469 U.S. at 58, 69. Mr. Browne's argument thus significantly overshoots the caselaw it purports to apply.

Second, Mr. Browne fails to identify a true logical inconsistency. Although the Government argues that Mr. Browne used a firearm to coerce Mr. Flores, possession of a firearm is not an element of kidnapping. Mr. Flores testified that it was too dark for him to see details

13

about the gun, including its color, and that he turned away from Mr. Browne while Mr. Browne was taking the gun from his bag. Tr. 251-52. Given this testimony and the lack of corroborating evidence that Mr. Browne had a gun, the jury may have felt unable to find guilt beyond a reasonable doubt on the gun charges even if it thought that Mr. Flores believed Mr. Browne had drawn a gun on him and had driven under coercion. This would be especially reasonable because Mr. Flores's email to Lyft, the video that captured the sound of his heavy breathing, and the fact that he returned his car all corroborate Mr. Flores's fear of Mr. Browne. *See* Tr. 257-59, 290-91, 341. There is nothing inconsistent in determining that corroborating evidence pushed the likelihood that Mr. Browne coerced Mr. Flores beyond a reasonable doubt while also determining that there could be doubt about whether Mr. Browne had a gun that the police never found. Moreover, the lead weapons charge required evidence that the weapon was an actual firearm, *see* Response to First Jury Note, which was likely lacking even if the jury credited Mr. Flores's entire testimony.

The alleged discrepancy between the jury's acquittal on the weapons charges and conviction on the kidnapping charge is not in fact a logical inconsistency. More important, it is not an example of mutually exclusive convictions. Even if the D.C. Circuit had adopted a rule making mutually exclusive convictions grounds for retrial, which Mr. Browne has not shown, the jury's acquittal on the weapons charges does not provide grounds for a new trial on kidnapping.

### 3. Mr. Browne Has Not Shown that the Weight of the Evidence Favors Him

When a motion for new trial challenges a conviction as contrary to the weight of the evidence, "a district judge weighs the evidence and evaluates the witnesses' credibility and decides whether a serious miscarriage of justice may have occurred." *Rogers*, 918 F.2d at 213. Especially when a jury verdict depends on a credibility determination, a court should not second-

guess the jury unless there is "serious danger" of a wrongful conviction.  *United States v. Wilkerson*, 656 F. Supp. 2d 22, 28-29 (D.D.C. 2009); *see also United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997) ("Where a new trial motion is based upon the weight of the evidence, the court may not order a new trial unless it is quite clear that the jury has reached a seriously erroneous result.").

Mr. Browne offers three arguments that the jury weighed the evidence erroneously by crediting Mr. Flores's testimony.  Mot. New Trial 8-10.  *First*, he asserts that "it is facially implausible that [Mr. Flores] would wait around McDonald's as long as he did, chat with Browne at the rear of the car as long as he did, deliberately choose the unattended EZ Pass lane when he was hoping someone would summon help, etc."  *Id.* at 9-10.  But plausible or not, there is undisputed video footage showing how long Mr. Flores stayed at McDonald's and how long he spoke with Mr. Browne at the rear of the car.  Gov. Exs. B1, B1A, B8, B9, B11, B12, B13; *see also* Tr. 315-334 (describing videos).[7]  And there is nothing implausible about the fact that Mr. Flores used his EZ Pass even though he had hoped at some point on the return trip that someone would get him help.  He may have driven through the EZ Pass lane because of habit,

---

[7]  Mr. Browne may mean it is not plausible that Mr. Flores stayed at the McDonalds without an agreement to drive Mr. Browne back to his apartment and not plausible that Mr. Flores talked with Mr. Browne at the back of his car except to agree on a cash payment for the return trip.  *See* Mot. New Trial 10 (claiming that the evidence shows Mr. Browne and Mr. Flores agreed to an off-the-books return trip).  While the jury was free to make this inference if it wished, it was also free to conclude that Mr. Flores stayed at the McDonalds for other reasons—such as to get coffee, use the bathroom, clean his car, and talk with his wife.  *See* Tr. 230-31, 234.  Or it could have concluded that, even if Mr. Browne had been willing to drive Mr. Browne back to his apartment at first, he changed his mind while talking with his wife.  *See* Tr. 371 (Mr. Flores's testimony that he told his wife he had a strange feeling about Mr. Browne and that his wife urged him to be careful and to come home).  As for the length of the conversation at the back of the car, it is just as consistent with Mr. Flores's testimony that he refused to drive Mr. Browne again as it is with the unsupported speculation that Mr. Flores requested a cash payment.

because Mr. Browne told him to do so, because he had changed his mind about wanting help from the police, or for some other reason.[8]

Finally, although Mr. Browne's use of "etc." does not fairly present or preserve any argument about plausibility, the Court notes that it found Mr. Flores to be a credible witness on all material points.  Mr. Flores's credibility was bolstered by the significant evidence corroborating much of his story and that he took various actions right after the incident against his self-interest (*e.g.*, identifying and surrendering the $100 to the police, relinquishing his car the next day, and deleting his Lyft profile) that were consistent with the conduct of a kidnapping victim.

*Second*, Mr. Browne asserts that the McDonald's security camera video contradicts Mr. Flores' original story "on several key points."  Mot. New Trial 10.  Although this portion of Mr. Browne's brief does not specify what points he has in mind, other sections of the brief make four observations about the video evidence.  First, Mr. Browne notes that the video contradicts Mr. Flores's original statement to the police that Mr. Browne drew his gun in the parking lot.  *Id.* at 5.  Second, he notes that the video shows Mr. Flores and Mr. Browne getting into the car at the same time although Mr. Flores testified that Mr. Browne got in first.  *Id.* at 6.  Third, he claims that the video implies that Mr. Flores opened the trunk for Mr. Browne although Mr. Flores testified that Mr. Browne opened the trunk for himself.  *Id.*[9]  Fourth, he claims that the video

---

[8]  Mr. Flores testified that he tried to attract attention on the return trip by speeding, but he later stopped speeding because he was afraid that police would hold him responsible for whatever Mr. Browne had put in his trunk.  *Id.* at 254-55.  And he may have changed his mind in part because he was not legally present in the United States.

[9]  The video does not show Mr. Flores opening the trunk for Mr. Browne.  But it shows "that the trunk opens as Mr. Flores is opening the door," and that, according to Mr. Browne's counsel, "looks for all the world like Mr. Flores has just popped the trunk for him."  Tr. 831-32.

undermines Mr. Flores's testimony that he argued with Mr. Browne inside the car by showing that he started the car about two second after entering. *Id.* at 15. Mr. Browne's counsel made all four of these points during trial, telling the jury during closing argument that Mr. Flores had changed his story to fit the video evidence. Tr. 333, 381, 831-34, 847.

But the video evidence on these four points did not require the jury to discredit Mr. Flores's testimony on other points. Courts have rejected the idea that a witness whose testimony is inaccurate in one thing must be inaccurate in all things, calling it "primitive psychology," "an absolutely false maxim of life," and a notion that would prevent almost any trial from going all the way to judgment. *See Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007) (Posner, J.). Witnesses sometimes misremember details. And they "are prone to fudge, to fumble, to misspeak, to misstate, to exaggerate." *Id.*

Mr. Flores may have made inaccurate statements about exactly when Mr. Browne drew a gun on him, whether Mr. Browne got into the car first, whether Mr. Browne opened the trunk himself, and how much of their argument took place inside and outside the car. But none of that shows that Mr. Flores's testimony is false on the key point that Mr. Browne forced him to drive across state lines against his will. None of it requires an adverse credibility determination about Mr. Flores's testimony as a whole. The evidence of Mr. Flores's frantic email pleading for Lyft to call the police, his heavy breathing and fumbling videography as Mr. Browne walked away, and his call to OnStar immediately afterward all point to someone in the midst of a traumatic event, someone likely to be truthful even if confused about some details. The jury decided to believe Mr. Flores that Mr. Browne coerced him, and it acted well within its discretion.

*Third*, Mr. Browne argues that the jury's findings were internally inconsistent because the jury convicted Mr. Browne of kidnapping but acquitted him of using a gun in doing so. Mot.

New Trial 10.  The Court has already evaluated and rejected this argument.  A jury can reach inconsistent verdicts.  Corroborating evidence helps explain why the jury would accept Mr. Flores's testimony that he was kidnapped while finding reasonable doubt about whether Mr. Browne brandished a gun.  So all three of Mr. Browne's challenges to the jury's credibility determination fail to establish the exceptional circumstances that would justify a new trial.  *See Wilkerson*, 656 F. Supp. 2d at 28-29.

In addition to challenging the jury's credibility determination, Mr. Browne argues more generally that Mr. Flores's account of his conduct does not make sense.  He claims that it would not have made sense for Mr. Browne to force Mr. Flores to drive him back to his apartment when he could have talked him into an off-the-books ride for cash or called another vehicle.  Mot. New Trial 10.  And he argues that, if he had committed the crime of kidnapping, he would not have asked the driver to drop him off at his home or stayed at his home with a large amount of cash and marijuana.  *Id.*

There are obvious reasons for Mr. Browne to have been in a hurry to leave McDonalds with a suitcase likely full of cash and/or marijuana, even if it meant forcing Mr. Flores to drive him.  And there are reasons he may have thought that Mr. Flores would fear the consequences of reporting him.  *See* Tr. 257 (Mr. Browne showed that he knew Mr. Flores's information by using his name on a phone call); *id.* at 261 (Mr. Browne paid Mr. Flores for the ride); *id.* at 413 (Lyft prohibited Mr. Flores from accepting cash payments).  But in any event, a jury need not explain the reasonableness of a defendant's conduct to convict him for it.  Forcing a Lyft driver to drive you to your own home and then staying there with contraband until the police arrive does show poor judgment.  But so would calling a friend to discuss drug trafficking while with a Lyft driver who knows your identity while on your way to a drug transaction and then immediately returning

to your home with the same driver and an unexplained suitcase. Criminal activity generally shows bad judgment, and good judgment is not an element of the offense of kidnapping. So this argument also fails to show that the jury's verdict was against the weight of the evidence.[10]

### B. Mr. Browne's Challenges to Mr. Flores's Testimony Show No Right to Acquittal

Federal Rule of Criminal Procedure 29 governs a motion for a judgment of acquittal. The strong presumption in favor of upholding a jury verdict applies to a motion for a judgment of acquittal as it does to a motion for a new trial. *Rogers*, 918 F.2d at 213. "In considering a motion for a judgment of acquittal, a district judge must appraise the record evidence in the light most favorable to the prosecution and determine whether [it] could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* "Thus a judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt." *United States v. Weisz*, 718 F.2d 413, 438 (D.C. Cir. 1983). The Court's finding in Part II.A.3 that the weight of the evidence supports a verdict of guilty on the kidnapping charge necessarily shows that there was evidence to support a finding of guilt beyond a reasonable doubt. But before adopting this conclusion, the Court will address a few ways in which Mr. Browne's arguments for acquittal differ from his arguments for a new trial.

*First*, Mr. Browne argues that evidence showing Mr. Flores was slow to call the police establishes that Mr. Browne never kidnapped him. Mot. Acquittal 15-17. He notes that Mr. Flores called Lyft before contacting the police. *Id.* at 15. He also notes that Mr. Flores

---

[10] Mr. Browne's Reply also states that, "[o]n the facts as the jury heard them, the guilty verdict on the kidnapping charge presents a serious danger that a miscarriage of justice has occurred." Reply ISO Mot. New Trial 4. In support of this statement, he lists several ways in which his new attorneys would handle a new trial differently than his prior attorneys. *Id.* at 4-8. It is not clear what this has to do with the facts as the jury heard them. Whatever Mr. Browne intends to argue by raising these points in his Reply, he has forfeited his argument. *See United States v. Hunter*, 786 F.3d 1006, 1011 (D.C. Cir. 2015) (holding that argument first presented to district court in reply brief was untimely).

contacted OnStar through a communication button built into his vehicle before contacting the police and that, at first, he declined the OnStar representative's offer to contact the police. *Id.* But Mr. Flores testified that he called Lyft because his first concern was to get his personal information removed from Mr. Browne's phone and to warn Lyft against sending drivers to pick up Mr. Browne. Tr. 264-65, 419-20. And his decision to contact OnStar does not show that OnStar was a higher priority for him than the police. It simply reflects the fact that he could reach OnStar through his car while using his phone to call Lyft. *See id.* at 266. Mr. Flores also testified that he declined the OnStar representative's initial offer to contact the police because he was not confident the police could help him. *Id.* at 419.[11] Viewing the evidence in the light most favorable to the prosecution, as the Court must on a motion for a judgment of acquittal, Mr. Flores's delay in contacting the police does not require setting aside the jury's verdict. *See Rogers*, 918 F.2d at 213.

*Second*, Mr. Browne claims that the evidence shows Mr. Flores made up a story about kidnapping after the fact because, during his conversation with OnStar, Mr. Flores mentioned no firearm, kidnapping, or involuntary drive. Mot. Acquittal 15-16. But this is simply not true. Mr. Flores's account to the OnStar representative did reference Mr. Browne's gun. Tr. 438-39 (discussion of recording of OnStar call); 449-50 (recording of OnStar call played to the jury).

*Third*, Mr. Browne's argument for acquittal supplements two arguments presented in his effort to get a new trial. He supplements his argument about an alleged agreement to an off-the-books ride by emphasizing that he paid Mr. Flores in cash for the trip and that the police never found a firearm. Mot. Acquittal 17. And he supplements his argument about the

---

[11] Mr. Flores's experiences growing up in another country may have affected his confidence in the police. The fear of deportation may also explain his hesitation to contact law enforcement.

unreasonableness of the conduct Mr. Flores attributed to him by noting that it would not make sense to commit a crime against Mr. Flores after paying Mr. Flores for the trip to Maryland using his own Lyft account, tied to his address and credit card. *Id.* at 18.  But these facts do not compel the conclusion that he is innocent of kidnapping.  Because there was evidence from which a reasonable jury could fairly find guilt beyond a reasonable doubt, Mr. Browne has failed to show a right to acquittal. *See Weisz*, 718 F.2d at 438.

*       *       *

"Of all the issues which are in the highest order for a jury one is hard pressed to suggest one more firmly intended and more plainly suited for jury determination than that of credibility." *Johnson v. United States*, 426 F.2d 651, 655 (D.C. Cir. 1970).  Mr. Browne had a full opportunity to challenge Mr. Flores's credibility, and he took advantage of it by presenting to the jury the same arguments that he makes here.  But the jury decided to credit Mr. Flores's testimony, at least where other evidence corroborated it.  This was within the jury's discretion, and Mr. Browne has not overcome the "strong presumption . . . in favor of upholding the jury verdict." *Rogers*, 918 F.2d at 213.

### III.    CONCLUSION

For these reasons, Defendant's Motion for New Trial or Judgment of Acquittal is DENIED.

SO ORDERED.

Dated: September 17, 2018                        _____
                                                 TREVOR N. MCFADDEN, U.S.D.J.